United States District Court
for the District of Columbia

| | |
|---|---|
| **F.S., a minor, *et al.*,**<br><br>        **Plaintiffs**<br><br>    v.<br><br>**THE DISTRICT OF COLUMBIA,** *et al.*,<br><br>        **Defendant**s | Civil Action No. 06-00923 (EGS) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT**

Plaintiffs, two minor disabled students and their parents, have filed suit against defendants the District of Columbia and Clifford B. Janey, Superintendent of the District of Columbia Public Schools (collectively, "defendants" or "the District"), to vindicate, in one instance, the student's rights under the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA") and the Civil Rights Act of 1871, 42 U.S.C. §1983 ("§1983) and, in the other, the student's rights under the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Rehabilitation Act").

The District has moved the Court to partially dismiss minor child F.S.'s IDEA claims to the extent they are alleged to fall within §1983's purview. It does not contest F.S.'s right to pursue her IDEA rights, but it has not answered the complaint as to this non-dismissable claim. As to minor child R.S., the District has moved the Court to dismiss her claims in their entirety, arguing that the Rehabilitation Act applies only to employment matters. Alternatively, the District seems to argue that R.S.'s claim can only be viewed as arising under IDEA, which in turn requires exhaustion of the administrative remedies mandated by 20 U.S.C. §1415.

Should the Court not dismiss R.S.'s claims in their entirety, the District asks the Court to sever F.S.'s and R.S.'s claims, citing Fed. R. Civ. P. 20(a) (regarding the permissive joinder of claims).

Plaintiffs' responses to the District's various arguments are summarized as follows:

- To the extent defendants have failed to respond to F.S.'s IDEA claim, they are in default and the Court should enter that default forthwith.
- F.S. has adequately stated a cause of action under §1983; defendants' motion confuses what is required in a legally sufficient complaint with what must be proved at trial, and seeks to impose a nonexistent heightened pleading standard upon F.S.'s §1983 claim.
- The Rehabilitation Act protects disabled persons against discrimination by entities, like the District, that receive federal funds; R.S. is entitled to pursue her Rehabilitation Act claims even though she does not allege discrimination in employment.
- The District has previously concluded–and R.S.'s parents agree–that R.S. is not disabled within the meaning of IDEA.  R.S. is pursuing her rights under the Rehabilitation Act only, and accordingly is required to exhaust IDEA administrative procedures only to the extent the District extends them to matters arising solely under the Rehabilitation Act.  To the best of our knowledge, the District does not do so.  To the extent that defendants' motion contends to the contrary, plaintiffs accept that representation and are willing to submit R.S.'s claims to administrative proceedings.
- Severance is a matter within the Court's discretion.  In this case, we believe severance would serve no purpose, particularly in light of the manner in which the claims are likely to proceed.

The first and last matters in the above list are addressed in separate filings, to which we respectfully direct the Court's attention. The remainder are discussed below.

## BACKGROUND

F.S. and R.S. are sisters, both disabled, both enrolled in District of Columbia public schools.[1] F.S. prevailed at an administrative due process hearing held on March 2, 2004 and subsequently submitted to the District of Columbia Public Schools ("DCPS") a request for reimbursement of the legal fees and expenses she incurred in achieving her victory. Over two years later, she still has not received a response to this request from DCPS and consequently filed this action to enforce her IDEA right to payment. In her complaint, F.S. alleges that DCPS's failure to pay her legal fees and expenses was not inadvertent, but resulted instead from either an affirmative policy not to pay legal fees or to deliberate indifference, endorsed by the ultimate decision maker within DCPS, to the obligation to pay the fees. *See* Complaint, ¶27. On that basis, F.S. asserts that DCPS's conduct violated not only IDEA, but also §1983.

R.S.'s story is more complex. On December 17, 2002, her mother, Lois Rosen, asked Murch Elementary School, a DCPS school in which R.S. was and remains enrolled, to evaluate R.S. for suspected disabilities. DCPS, as is its wont, neither properly nor timely evaluated R.S. On November 5, 2003, DCPS convened a multidisciplinary team ("MDT") meeting at which it concluded that R.S. was not disabled within the meaning of IDEA but **was** disabled within the meaning of the Rehabilitation Act. Accordingly, it developed what is known as a "504 plan" for R.S. but recommended that she receive occupational therapy only. R.S.'s parents accepted DCPS's assessment that R.S. is not IDEA-eligible, but disagreed with the level of service proposed and

---

[1] Unless otherwise indicated, all facts in this background statement are drawn from the complaint.

requested speech/language therapy as well. This led to another 14 months of assessments, reviews of assessments and intermittent home-school communication, followed by another MDT meeting for R.S. on January 6, 2005. At that meeting, all parties agreed that R.S. was not disabled within the meaning of IDEA but that she remained entitled to some amount of service under the Rehabilitation Act. DCPS then decided that even if R.S. had needed speech/language therapy in the past (a question the MDT chose not to address), it was not currently necessary. R.S.'s parents, who had privately provided speech/language therapy for R.S. because they were unwilling to await DCPS's sluggish response, agreed that R.S. no longer needed speech therapy (she had, in fact, already been discharged by her private therapist) but asked DCPS to reimburse them for, essentially, doing DCPS's work for it, both in providing therapy and in securing private occupational and speech/language evaluations on which DCPS had relied in lieu of performing its own.

DCPS responded that the MDT meeting could not consider the reimbursement request and asked R.S.'s parents to submit it separately in writing, which they subsequently did. DCPS has never acted on that request. It also has never provided R.S. or her parents with the written notice required by IDEA (20 U.S.C. §1415(b)(3) and (c)(1)) or the Rehabilitation Act (34 C.F.R. §104.36) whenever a public agency proposes to act or declines to act with respect to a child asserting IDEA or Rehabilitation Act rights, and has never informed R.S. or her parents of their procedural rights under the Rehabilitation Act.[2] R.S. and her parents therefore brought their effort to secure reimbursement directly to this Court for resolution.

---

[2] The facts contained in this sentence are not part of the complaint. We recognize that allegations of counsel are not evidence and do not expect the Court to accept them as true, unlike the allegations in the complaint itself, which are accepted in evaluating a motion to dismiss. The allegations are included only to provide context for the decision to file suit, as opposed to first requesting the administrative relief the District now says is a mandatory prerequisite to court litigation.

In its motion to dismiss this action, the District contends for the first time (and contrary to the conclusions reached by its own employees) that R.S. is not, as a matter of law, protected by the Rehabilitation Act and has no rights thereunder. Alternatively, DCPS seems to argue that R.S. is, if anything, an IDEA claimant who must first exhaust IDEA's administrative procedures–again contrary to the conclusions reached by its own employees.

As we show below, the District's arguments are either incorrect as a matter of law or reverse positions it has previously taken with respect to plaintiff R.S. The Court should either deny the motion in its entirety or–accepting in good faith the newly constructed arguments with respect to R.S.'s IDEA status–stay that portion of the case that may require administrative exhaustion to allow R.S. to pursue that remedy.

## ARGUMENT

### I. F.S. has stated a legally sufficient cause of action under 42 U.S.C. §1983

The motion to dismiss F.S.'s §1983 claim confuses the difference between **pleading** a legally sufficient case and **proving** a *prima facie* case as an evidentiary matter. The District principally relies upon *Walker v. District of Columbia,* 157 F.Supp.2$^d$ 11 (D.D.C. 2001), which set forth the elements which some of the judges on this Court require a plaintiff to prove in order to hold the District liable under §1983 for compensatory damages incurred as a result of IDEA violations. Those elements are that:

- DCPS violated one or more specific provisions of IDEA;
- Exceptional circumstances exist, *e.g.,* that the DCPS conduct that caused the IDEA violations was persistently egregious and prevented or frustrated the plaintiff from securing equitable relief under IDEA;

- The District has a custom or practice that is the moving force behind the alleged IDEA violations; and
- The normal IDEA remedies (specifically, compensatory education) are inadequate to compensate the plaintiff for the harm suffered.

This standard is not universally followed; some judges have found §1983 violations without necessarily finding evidence supporting all four prongs. *See, e.g., Johnson v. District of Columbia,* 190 F.Supp.2$^d$ 34 (D.D.C. 2002); *Zearley v. Ackerman,* 116 F.Supp.2$^d$ 109 (D.D.C. 2000). In any event, *Walker* sets forth a standard for the Court to apply in determining **at trial** whether DCPS's IDEA violations rise to the level of §1983 violations. In moving to dismiss, the District is asking the Court to hold, as a matter of law, that F.S. must satisfy a heightened pleading standard by including in her complaint all of the facts that would allow a Court to conclude that her proof would meet the *Walker* test. This is incorrect.

Over the years federal courts have repeatedly attempted to impose heightened pleading standards upon various causes of action, and the United States Supreme Court has repeatedly reigned in this tendency. *See, e.g., Hill v. McDonough,* ___ U.S. ___, 2006 U.S. LEXIS 4674 (No. 05-8794, June 12, 2006) ("Specific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts."); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993). Except for those actions specifically identified to be pled with specificity, *i.e.,* fraud and mistake (*see* Fed. R. Civ. P. 9(b)), a legally sufficient complaint need contain only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Swierkiewicz v. Sorema N.A., supra.* Discovery

6

and summary judgment are then used to flesh out the details of a claim.  *Swierkiewicz v. Sorema N.A., supra; Atchison v. District of Columbia,* 73 F.3$^d$ 418 (D.C. Cir. 1996).

A complaint which recites only facts showing an IDEA violation, without more, **may** not automatically state a cause of action arising under §1983.  *See, e.g., Savoy-Kelly v. Eastern High School,* 2006 U.S. Dist. LEXIS 19730 (D.D.C., April 14, 2006); *R.S. v. District of Columbia,* 292 F.Supp. 2$^d$ 23 (D.D.C. 2003).  Whether this is true in cases in which plaintiffs seek to enforce established IDEA rights which DCPS has disregarded, as opposed to those in which they are aggrieved by adverse hearing officer determinations, is currently before the United States Court of Appeals for the District of Columbia Circuit in *Blackman v. District of Columbia,* Appeal Nos. 04-7139, 04-7144, 04-7145 & 04-7147 (argued March 14, 2006).  In *Blackman,* the student/parent appellees have argued that the **only** avenue for enforcing IDEA rights is an action brought pursuant to §1983, as IDEA itself creates a cause of action only for a party who is trying to set aside an adverse hearing officer's determination.  If the D.C. Circuit adopts this position, then it will indeed be legally sufficient to allege that an IDEA violation, by itself, gives rise to a §1983 claim–at least when, as in F.S.'s case, the IDEA violation consists entirely of DCPS's refusal to do that which it is obligated by law to do.

Regardless of the outcome of the *Blackman* appeal, however, F.S.'s complaint satisfies whatever pleading standard could be applied.  Contrary to the District's assertion, F.S. has not merely pled an IDEA violation and then assumed, without more, that this also violates §1983.  Rather, F.S. specifically alleged, in ¶27 of the complaint, that the District deliberately failed to pay her legal fees and expenses pursuant either to a policy not to do so or to deliberate indifference to the payment obligation.  These allegations clearly satisfy the first and third prongs of the *Walker* test.

The second *Walker* prong does not readily apply to F.S.'s situation. It requires proof that DCPS has engaged in egregious conduct that prevented her from obtaining equitable relief, and clearly was formulated for the situation in which DCPS's actions have hindered the student's receipt of special education and related services under IDEA. To the extent an allegation of egregious conduct is required, F.S. has satisfied this by asserting that DCPS has acted deliberately to avoid a well established payment obligation. Should the Court deem anything more is needed, F.S. is prepared to amend the complaint to flesh this out more completely.

The fourth *Walker* prong–proof that the normal IDEA remedies (specifically, compensatory education) are insufficient–need not be stated explicitly in a complaint like F.S.'s. She seeks payment of withheld attorney's fees and expenses; there is no compensatory education to be had.

Based upon the foregoing, F.S. submits that her complaint adequately states a cause of action against defendants under §1983. Should the Court disagree, F.S. requests leave to amend the complaint to bring additional facts to the Court's attention.

## II. R.S. is entitled to pursue her Rehabilitation Act rights but is willing to pursue administrative IDEA remedies in light of the District's change in position

### A. The Rehabilitation Act protects disabled students who seek appropriate education

The District first argues that the Rehabilitation Act applies only to persons who allege that they have suffered discrimination in employment. Defendants' memorandum of points and authorities in support of partial motion to dismiss, (unnumbered) pp. 4-5. There is no support for this position. The Rehabilitation Act exists to maximize the prospects of disabled persons for employment, economic self-sufficiency, independence and inclusion and integration into society.

29 U.S.C. §701(b). Toward that end, all recipients of federal funds–including DCPS–are prohibited from discriminating against individuals with disabilities. 29 U.S.C. §794.

The regulations promulgated to effectuate the Rehabilitation Act make it clear that this means that schools must identify disabled students and take appropriate steps to make sure that each receives a free appropriate public education. *See* Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving or Benefitting from Federal Financial Assistance, 34 C.F.R. Part 104, Part D. This is an independent obligation that meshes with, but is not supplanted by, IDEA. Although honoring a disabled student's IDEA rights will satisfy the Rehabilitation Act, there are students with disabilities (such as R.S.), who may not be IDEA-eligible but nevertheless fall within the Rehabilitation Act's purview. Typically, these are students who largely can participate unaided in general education but whose disabling conditions require school system adjustments in order to allow them to benefit from the existing course of study. A classic example of such a student would be one who uses a wheelchair and needs special arrangements to enter the school building and travel through it, and who may also require curricular adjustments, *e.g.,* alternative physical education requirements or different means of presenting certain assignments. Such issues would fall under the Rehabilitation Act, not IDEA.

The District relies principally upon *Smith v. Robinson,* 468 U.S. 992 (1984), which held that claims which properly fall within IDEA's purview are not automatically deemed covered by the Rehabilitation Act as well. To the extent *Smith v. Robinson* can be read to mean that IDEA is the exclusive remedy for disabled students seeking educational services, it was effectively overruled when Congress later passed the Handicapped Children's Protection Act, codified at 20 U.S.C. §1415(l), which provided that disabled students retain their rights under, *inter alia,* the

Rehabilitation Act notwithstanding IDEA's existence. *Abney v. District of Columbia,* 849 F.2$^d$ 1491 (D.C. Cir. 1988); *R.S. v. District of Columbia, supra.*[3]

In any event, the District's argument is absurd in R.S.'s case, where DCPS has already found that she is not eligible for special education or related services under IDEA, but instead deemed her entitled to educational services only under the Rehabilitation Act. DCPS has already conceded R.S.'s substantive Rehabilitation Act rights and denied any IDEA entitlement; the District's current motion cannot be reconciled with its actions to date.

R.S. is protected by the Rehabilitation Act and is entitled to pursue her claims under that statute, notwithstanding any separate IDEA rights she may have.

### B. R.S. is willing to exhaust her newly disclosed administrative remedies

It is correct that IDEA and its implementing regulations create an administrative remedy that must ordinarily be exhausted before one goes to court on an IDEA claim. Until defendants filed their motion on June 16, 2006, however, no one thought R.S. was covered by IDEA. As indicated, DCPS had previously determined that she was **in**eligible for IDEA services and R.S.'s parents did not challenge this, because it appeared that everything she needed was available under the Rehabilitation Act, which everyone agreed (again, at least until June 16, 2006) applied to R.S.'s case.

Disabled students whose rights arise jointly under IDEA and the Rehabilitation Act must also exhaust their IDEA remedies prior to bringing any action in court under any applicable statute, but

---

[3] We note that nearly three years, ago, in *R.S. v. District of Columbia, supra,* the district court chided the District for making the same outmoded argument (based on *Smith v. Robinson)* that it is presenting now in this case.

only if the relief sought is available under both IDEA and the other relevant statute. 20 U.S.C. §1415(l). Again, as R.S. was previously found IDEA-ineligible, she was not seeking relief available under IDEA and her Rehabilitation Act claims were not subject to IDEA exhaustion.

The Rehabilitation Act separately requires exhaustion of administrative remedies, but first there must be an administrative scheme to invoke. Recipients of federal funds who operate elementary education programs must establish procedural safeguards to protect disabled persons who require special instruction or related services. 34 C.F.R. §104.36. Those safeguards include notice, an opportunity for the parents or guardian of the person to review relevant records, representation by counsel, and a review procedure. *Id.* Compliance with IDEA's procedural safeguards is one means of satisfying this requirement, school systems are not required to use their IDEA systems for solely Rehabilitation Act claims. *Id.* They are free to develop alternate procedures, provided those procedures contain all required elements of the process that is due under that statute.

To the best of our knowledge, DCPS has never identified the administrative procedures it has established for persons with issues that fall exclusively under the Rehabilitation Act. As indicated *supra,* R.S. and her parents received no notice of their procedural rights following the January 6, 2005 MDT meeting, and DCPS has never responded in any fashion to their subsequent request for reimbursement of the cost of R.S.'s private evaluations and speech/language therapy. Nor has DCPS ever explicitly stated that Rehabilitation Act claimants should use the available IDEA due process procedures even when their issues do not fall within IDEA's purview. DCPS's IDEA due process regulations, found at 5 DCMR §§3029-3031, clearly contemplate IDEA disputes only. Thus, it certainly was not obvious when plaintiffs filed suit that R.S. had any administrative option, and accordingly it appeared that any attempt at exhaustion would have been futile.

Now, however, the District has taken the position in its motion that R.S. **is** covered by IDEA and that she must exhaust her IDEA administrative remedies. Assuming this about-face occurred in good faith and not merely as a delaying tactic, plaintiffs are willing to submit the entire matter to an administrative hearing officer and have him/her decide in the first instance which statute applies to R.S.'s case, whether her rights under that statute have been violated and then, if so, the remedies to which she is entitled.

Because of the odd manner in which this has arisen and the strange arguments defendants have made, plaintiffs respectfully submit that the most appropriate action for the Court to take at this time is to stay this portion of the case pending receipt of the hearing officer's determination. If the administrative proceedings resolve R.S.'s issues, her claim can be dismissed; if not, the case can proceed, if necessary on an amended complaint.

**CONCLUSION**

For all the foregoing reasons, plaintiffs respectfully submit that defendants' partial motion to dismiss the complaint should be denied. The Court should allow plaintiff F.S.'s §1983 claim to proceed, on an amended complaint if warranted. With respect to plaintiff R.S., we request a ruling that she is entitled to assert claims under the Rehabilitation Act, and a stay of further proceedings on her claims pending completion of whatever administrative procedures are appropriate.

/s/ *Diana M. Savit*

Diana M. Savit #244970
**SAVIT & SZYMKOWICZ, LLP**
7315 Wisconsin Avenue
Suite 601N
Bethesda, Maryland 20814
(301) 951-9191
Attorneys for plaintiffs