*State Educational Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*

# *Due Process Complaint Notice*

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a due process complaint notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- Parents initiating a complaint must provide a completed due process complaint form to the Local Education Agency ("LEA"). For students in traditional public schools, non-public day school, or residential treatment facility, notice to the LEA shall be provided to the Office of the General Counsel, 825 N. Capitol St. NE, Washington, D.C. 20002, with a copy to the Student Hearing Office. If a charter school is a named party, the due process complaint must be provided to the principal or director of the charter school, with a copy to the Student Hearing Office.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution sessions.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

- Policies and Procedures governing due process hearings are contained in federal and local law and the SHO SOP. You may obtain a copy of the SOP from the Student Hearing Office or any D.C. Public or Charter School without cost. The SOP is also at the DCPS website.

## A.    Information About the Student:

Student Name: Rachel Snyderman                                          Birth Date: 2/25/98

Address: 4740 Connecticut Avenue, N.W., #412, Washington, D.C. 20008

Home School: Murch Elementary School

Present School of Attendance: Murch Elementary School

Revised May 1, 2006

Is this a charter school? ____No____  (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student: __Lois Rosen & Mark Snyderman__

Address (if different from the student's above): __Same as student__

Phone/Contact Number: (202) 966-9444   Fax Number (if applicable): _____

## B.  Individual Making the Complaint/Request for Due Process Hearing:

Name: Lois Rosen & Mark Snyderman

Complete Address:  4740 Connecticut Avenue, N.W., #412, Washington, D.C.  20008

Phone: (h) (202) 966-9444   (w) (202) 401-1949   (Fax) _____ (e-mail) loismark@starpower.net

Relationship to the Student:

| [X] | Parent | [ ] | Legal Guardian | [ ] | Parent Surrogate |
| [ ] | Self/Student | [ ] | Local Education Agency (LEA) | [ ] | Parent Advocate |

## C.  Legal Representative/Attorney (if applicable):

Name: Diana M. Savit, Esq., Savit & Szymkowicz, LLP

Address: 7315 Wisconsin Avenue, Suite 601N, Bethesda, Maryland 20814

Phone: (w) (301) 951-9191   (Fax) (301) 718-7788   (e-mail)   dms@bowsslaw.com

Will attorney / legal representative attend the resolution session?   [X] Yes   [ ] No

## D.  Complaint Made Against (check all that apply):

[X] DCPS school (name of the school if different from page one)_____

[ ] Charter school (name of the charter school if different from page one)_____

[ ] Non-public school or residential treatment facility (name)_____

[ ] Parent

## E. Resolution Session Between Parent and LEA:

I understand that it is my right to have a resolution session to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution session to avoid having this meeting.)

[ ] I wish to waive the Resolution Session.

## F. Mediation Process:

IDEA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session. Mediation is also available prior to a due process hearing, but mediation may not be used to deny or delay a parent's right to a hearing on the parent's due process complaint. Please check all that apply:

[ ]     I am requesting mediation as an alternative to the resolution session meeting.

[ ]     I am requesting mediation services **only**.

[X]     I do not wish to use a mediator at this time.

## G. Facts and Reasons for the Complaint:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions. Provide complete details about all the facts supporting your claims. (You may attach additional pages if needed):

1.  What is the nature of the problem, including the facts relating to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

    A.     *Reimbursement of speech/language and occupational therapy expenses*

    On December 17, 2002, Ms. Rosen asked the staff at Murch to evaluate Rachel for suspected disabilities. This request was made, in part, because Rachel's teachers recommended it. In response, on January 10, 2003 DCPS conducted an incomplete speech and language evaluation that concluded that Rachel did not require intervention at that time. On March 17, 2003, DCPS representatives met with Ms. Rosen and Mr. Snyderman to inform them about the report's conclusions and to advise that DCPS did not believe Rachel was disabled or eligible for services. Ms. Rosen and Mr. Snyderman did not agree with DCPS's conclusion. On March 28, 2003, they brought a number of additional issues to DCPS's attention and asked it to conduct a comprehensive assessment of Rachel. They subsequently provided privately obtained speech/language and educational evaluations that identified disabling conditions that DCPS needed to consider and address.

    On June 13, 2003, DCPS conducted its second speech/language evaluation of Rachel, which included consideration of the private evaluation. The DCPS evaluator did not understand the private assessment and mistakenly believed that Rachel had tested in the average range. Consequently, she did not recommend intervention for Rachel. A separate psychoeducational evaluation conducted by DCPS on June 17, 2003 found that Rachel was not learning disabled within the meaning of IDEA, but recommended an occupational therapy evaluation to ascertain whether Rachel had other needs. This evaluation took place on October 3, 2003 and October 31, 2003. In the interim, Ms. Rosen and Mr. Snyderman had arranged for a private occupational therapy evaluation because they were concerned about the long delay, and made that evaluation available to DCPS. Based upon all available information, including that contained in Rachel's private evaluations, the DCPS evaluator eventually recommended that Rachel receive occupational therapy.

    DCPS convened a multidisciplinary team (MDT) meeting on November 5, 2003 to discuss Rachel's eligibility for services as a disabled student. The team concluded that Rachel was not disabled as that term is defined by IDEA, and accordingly found her ineligible for special education. Based upon the information available at that time, Ms. Rosen and Mr. Snyderman do not challenge this determination. The team further found that Rachel was disabled within the meaning of the Rehabilitation Act and recommended that she receive occupational therapy, but DCPS refused to

Revised May 1, 2006                                          3

recommend speech therapy in light of its evaluator's erroneous conclusions. Ms. Rosen and Mr. Snyderman protested the speech/language decision and asked DCPS to review the private evaluation more carefully.

While awaiting further action by DCPS, Ms. Rosen and Mr. Snyderman commenced private speech therapy for Rachel, at their own expense. The requested DCPS review took place on December 15, 2003, and recommended further speech/language testing, but otherwise reached no conclusions. DCPS provided a copy of the review to Ms. Rosen and Mr. Snyderman in March 2004. DCPS did not request Ms. Rosen's and Mr. Snyderman's consent to the recommended additional testing until September 2004, and did not conduct the recommended re-testing until November 2004. By this time, Rachel had completed private speech/language therapy. DCPS's formal evaluation, dated November 27, 2004, found no need for speech/language intervention at that time.

DCPS reconvened an MDT meeting for Rachel on January 6, 2005, at which time all team members agreed that based upon Rachel's then-current performance, she was not disabled within the meaning of IDEA, was not eligible for special education, and that occupational therapy was the only service she needed at that time as a student qualifying for services under the Rehabilitation Act. Ms. Rosen and Mr. Snyderman observed, however, that Rachel's progress up to that point in the speech and language areas was attributable to the private interventions they had secured and paid for while DCPS took over two years to assess Rachel's needs. They requested reimbursement for those services and for the evaluations they had obtained when DCPS failed to conduct proper occupational therapy and speech/language assessments. DCPS stated that it could not address reimbursement at the MDT meeting, but asked Ms. Rosen and Mr. Snyderman to submit a written request, which would be considered separately and at a later time. Ms. Rosen and Ms. Snyderman submitted a formal request to that effect on June 1, 2005. DCPS has never responded.

  B.  *Continued recognition of §504 eligibility, failure to provide agreed services and preparation of appropriate §504 plan*

Pursuant to Rachel's §504 plan, she was to receive occupational therapy services during the 2005-06 school year. These services were suspended for at least eight weeks due to lack of an occupational therapist. At a MDT meeting held on May 26, 2006, DCPS acknowledged that it could not explain why Rachel did not receive the required service; it has subsequently acknowledged that she is entitled to compensatory services to make up for the missed time, but has never arranged for same.

At the same meeting on May 26, 2006, DCPS presented to Ms. Rosen and Mr. Snyderman an occupational therapy evaluation conducted January 26, 2006. The evaluation identified a number of continuing physical problems Rachel experiences that are attributable to low muscle tone and poor muscle strength, but found that these problems did not affect her performance in academic classes. A different occupational therapist–who had not administered the evaluation and who has never met Rachel–opined, based upon this evaluation, that Rachel no longer requires occupational therapy. The MDT did not consider whether–assuming the correctness of the therapist's conclusion–Rachel nevertheless required continuing accommodations and/or additional occupational therapy on account of her reported difficulties with physical movement in the school building and in satisfying her physical education requirements. The DCPS members of the team did not understand that a presumed lack of need for **therapy** does not necessarily mean that a student is no longer disabled within the meaning of §504 nor that the student is ineligible for a §504 plan. As a result, Rachel no longer has a §504 plan and is not receiving needed accommodations during the 2006-07 school year. All that DCPS would offer at the May 2006 meeting was that the LEA representative would speak to someone to "find out what DCPS can do," and that perhaps there would be another meeting in the fall after school resumes. To date, Ms. Rosen and Mr. Snyderman have heard nothing further, and no meeting has been scheduled.

Also on May 26, 2006, Ms. Rosen and Mr. Snyderman requested an independent occupational therapy evaluation due to their dissatisfaction with the January 26, 2006 evaluation. DCPS has never responded to this request. It has neither acceded to the request nor requested a due process hearing to contest it, which are the only legal options available to it in response to a request for an independent evaluation.

2.  To the extent known to you at this time, how can this problem be resolved?

- Find Rachel eligible for either special education services under IDEA or accommodations under §504 as of the date those services were first requested, and then identify the services Rachel should have received and when they should have started; *i.e.,* within a reasonable time after evaluation was first requested or within the legally mandated time, whichever is less.

- Reimburse the family for Rachel's private speech/language evaluation.

- Reimburse the family for the private speech therapy provided because DCPS did not recognize Rachel's need for same.

- Reimburse the family for the private occupational therapy evaluation obtained in 2003 on account of DCPS's delay in performing its own evaluation.

- Conduct the requested independent occupational therapy evaluation and provide occupational therapy during the 2006-07 school year consistent with the conclusions thereof.

- Provide compensatory occupational therapy services for Rachel.

- Continue to recognize Rachel as disabled within the meaning of §504 and develop an appropriate §504 plan for her, including accommodations for her as she moves through the school building, and adjustments to physical education.

3.  Issues presented:

- Whether DCPS unduly delayed in recognizing Rachel as a disabled student and consequently forced her parents to unnecessarily pay for evaluations and services DCPS itself should have provided.

- Whether Rachel remains disabled within the meaning of §504 and therefore is entitled to accommodations for that disability, including development of an appropriate plan for same.

- Whether Rachel is entitled to compensatory occupational therapy for time missed during the 2005-06 school year.

- Whether Rachel is entitled to an independent occupational therapy evaluation.

- Whether Rachel should continue to receive occupational therapy during the 2006-07 school year.

## H. **Estimated amount of time needed for the hearing:**   One day

Note: In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing. Please indicate if you believe more than two hours will be needed.

## I. **Accommodations and Assistance Needed:**

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type) _____

- Special Communication (please describe the type)_____

- Special Accommodations for Disability (please be specific)_____

- Other  <u>The family is planning a major life cycle event, and may require scheduling accommodations.</u>

## J. <u>Waiver of Procedural Safeguards (Optional):</u>

[ ] I (parent/guardian) waive receiving a copy of the procedural safeguards at this time. I understand that waiver of this right is optional and not a requirement for filing this Complaint.

## K. <u>Requirement to Consider Compensatory Education:</u>

If a hearing is held on a date that is past the date on which the Hearing Officer's Determination was required to be issued, there is a rebuttable presumption of harm and compensatory education must be an issue considered by the Hearing Officer during the hearing.

## L. <u>Parent or Local Educational Agency Signature and Affirmation:</u>

I affirm that the information provided on this form is true and correct.

_____     September 26, 2006
Signature of Parent or Guardian                                              Date

_____     _____
Signature of Representative of the Local Educational Agency            Date
(if hearing requested by a LEA)

## M. <u>Signature of Attorney/ Legal Representative:</u>

_____     September 26, 2006
Legal Representative/Advocate                                               Date

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002**
**Fax number: 202/442-5556**

Revised May 1, 2006                          6