# United States District Court
# for the District of Columbia

| | |
|---|---|
| **F.S., a minor, by and through her parents and next friends, Lois Rosen and Mark Snyderman,** *et al.,*<br><br>**Plaintiffs**<br><br>v.<br><br>**THE DISTRICT OF COLUMBIA,** *et al.*,<br><br>**Defendant**s | Civil Action No. 06-00923 (EGS) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' AMENDED COMPLAINT OR IN THE ALTERNATIVE FOR A STAY OF PROCEEDINGS**

Plaintiffs F.S., a minor, and her parents, Mark Snyderman ("Snyderman") and Lois Rosen ("Rosen") (collectively, "plaintiffs"), recently amended their complaint to add to their previously filed claim for an award of their legal fees and expenses a count to enforce a March 10, 2004 hearing officer's determination (Exhibit 1 to the amended complaint) in the face of the District of Columbia Public Schools' ("DCPS") declared intent to violate that determination. Defendants District of Columbia ("the District") and Clifford B. Janey, Superintendent of the District of Columbia Public Schools ("Janey") (collectively, "the District" or "defendants") have moved the Court to dismiss this portion of the amended complaint, effectively arguing that plaintiffs cannot come to this Court to enforce a previously entered administrative determination. The District's position, if adopted, would invalidate significant procedural protections available to disabled students under the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA") as well as contravene established precedent in this jurisdiction and elsewhere. Accordingly, the motion should be denied.

## BACKGROUND

This matter comes before the Court on the following facts alleged in the amended complaint, which must be accepted as true for purposes of evaluating the motion to dismiss: F.S. is a disabled student who has for several years been recognized by DCPS as eligible for special education under IDEA. At a March 2, 2004 administrative due process hearing, F.S.'s parents and DCPS agreed, *inter alia,* that DCPS would fund F.S.'s special education "until such time as the parents accept a DCPS-proposed alternative placement or DCPS prevails at a due process hearing regarding its proposed alternative placement. [F.S.] will remain in her current placement, [The Lowell School], until her placement is changed as provided in this paragraph." Amended complaint, Exhibit 1, p. 3.

DCPS separately agreed to undertake the following steps to plan for F.S.'s future special education:

- pay for private evaluations obtained by F.S.'s parents;
- convene a multidisciplinary team (MDT) meeting for F.S. within 15 days after receiving the updated evaluations; and
- at the MDT meeting, update F.S.'s individualized education program ("IEP"), address her entitlement to compensatory education, and discuss placement, if appropriate.

Amended complaint, Exhibit 1, p.4. The parties' March 2, 2004 agreement was memorialized in a March 10, 2004 hearing officer's determination, which was the final administrative decision in the matter. Amended complaint, Exhibit 1.

DCPS did not comply with the March 10, 2004 determination. It did not convene the required MDT meeting until October 12, 2006, some 14 months after receiving the private

2

evaluations from F.S.'s parents, and approximately 10 months after it completed a social history. Amended complaint, ¶¶13-16. Although DCPS funded F.S.'s placement at The Lowell School ("Lowell") through June 2006, it made only perfunctory efforts to gather information about her and did not develop, plan nor monitor her educational program. *Id.*

Lowell is an elementary school which ends at the sixth grade. F.S. finished its program and graduated in June 2006. *Id.,* ¶15. Because DCPS proposed no program or placement in which F.S. could continue her education beyond her Lowell graduation, Snyderman and Rosen found a comparable school for older students, The Edmund Burke School ("Burke"), and enrolled F.S. there for the 2006-07 school year. *Id.*

DCPS made minimal efforts to acquaint itself with F.S.'s educational needs before the October 12, 2006 MDT meeting; it gathered no educational information about her and did not even visit Burke until the morning of the MDT meeting. It was unable to observe F.S. in an academic class because she was participating in a special assembly on the day DCPS chose to visit. *Id.*, ¶17. At the MDT meeting itself, DCPS admitted it was unaware of its own records and history; that it did not know about the earlier due process proceedings, the March 10, 2004 hearing officer's determination, or its prior finding that F.S. was disabled and eligible for special education; nor did it know that it had been funding F.S.'s special education for several years. *Id.,* ¶18. DCPS indicated that it believed F.S. was new to the system and seeking special education for the first time. *Id.* Stating that the evaluations provided by Snyderman and Rosen were insufficient to establish F.S.'s eligibility for special education, DCPS declared her ineligible and refused to provide special education for her or to fill in the gaps in its information about her. *Id.*, ¶19.

DCPS also refused to accept or believe information provided by Snyderman and Rosen about F.S.'s long history within DCPS, or even to receive a copy of the hearing officer's determination from them, because it could not verify the information from its own records, which it acknowledged were missing. *Id.* For the same reason, DCPS refused to continue to fund F.S.'s special education placement while a challenge to the ineligibility finding went forward, even though this clearly was required by the 2004 hearing officer's determination. *Id.,* ¶21.

Following written notice to DCPS's Office of Mediation and Compliance (required by the hearing officer's determination) that DCPS was violating the 2004 determination–a notice which DCPS ignored–Snyderman and Rosen requested a due process hearing to challenge the ineligibility determination and the refusal to provide special education during the current school year. *Id.,* ¶¶ 21-23. After submitting the due process request on December 29, 2006, plaintiffs came to this Court to enforce the hearing officer's determination, seeking an order directing DCPS to provide special education for F.S. unless and until DCPS prevails in new due process proceedings.

Defendants now contend that this Court should refuse to enforce plaintiffs' rights, essentially asking the Court to validate DCPS's dilatory conduct, sloppy record-keeping and obviously inadequate assessment of F.S.'s special education needs. As we show below, their arguments have no merit and their motion should be denied.

## ARGUMENT

**I.     F.S. is entitled to remain in special education, in a placement comparable to Lowell, unless and until DCPS changes that placement through due process procedures**

The District's motion glosses over the most fundamental problem with its position: F.S. prevailed in a due process proceeding which placed her in special education, in Lowell's program,

until such time as her parents agree to a DCPS-proposed alternative or DCPS prevails in due process proceedings to change that placement. Neither of the conditions precedent to changing F.S.'s placement has occurred. Instead, DCPS institutionally forgot about F.S. for nearly three years, then decided that she was not entitled to special education because it had lost all of the information which demonstrated her need and refused to correct the deficiency in its knowledge. While its resulting thick-headed decision to remove F.S. from special education must first be challenged administratively (*see* 20 U.S.C. §1415(f)), her right to continued special education while these proceedings take place is clear.

F.S. is entitled to enforce her earlier victory. She has no further administrative remedies to exhaust on this issue. *Laster v. District of Columbia,* 394 F.Supp.2$^d$ 60 (D.D.C. 2005) (*"Laster I"*). The reason is that a special education student's right to remain in her current placement cannot be vindicated adequately through the administrative process. *Id.* This is all the more true here, where F.S. is entitled not only to the general protection of the statutory "stay-put" provision (*see* 20 U.S.C. §1415(j)), but also to the benefit of the hearing officer determination entered specifically for her.

DCPS has muddied this rather straightforward analysis by arguing that because F.S. graduated from Lowell, the school she previously attended, she effectively has no current placement. It is, however, settled law in this jurisdiction and elsewhere that the unavailability of a particular special education program does not relieve a public school system of the responsibility to provide special education to a child previously identified as disabled and eligible under IDEA. *McKenzie v. Smith,* 771 F.2$^d$ 1527 (D.C. Cir. 1985) (when program became unavailable, DCPS was obligated to provide a new placement in a program similar to the previous one). *Accord, Wagner v. Board of Education of Montgomery County,* 335 F.3$^d$ 297 (4th Cir. 2003) (private provider refused to continue serving student; school system was obligated to provide services and parents could seek preliminary

5

injunction if parties could not agree on new program);[1] *Laster v. District of Columbia,* 439 F.Supp.2d 93 (D.D.C. 2006) ("*Laster II*") (school system must propose comparable program when current one becomes unavailable); *Laster I, supra* (if current placement cannot continue to enroll student, public school system must find similar replacement alternative); *Henry v. School Administrative Unit #29,* 70 F.Supp.2d 52 (D.N.H. 1999) (when student outgrows program, school system fulfills "stay-put" obligation by placing student in comparable program); *Stock v. Massachusetts Hospital School,* 392 Mass. 205, 467 N.E.2d 448 (1984) (special education obligations not necessarily eliminated by student's graduation).

Under IDEA, a special education "placement" is not merely a physical site or location; it is the totality of the services the student needs, at a site that can implement her program. *Laster I, supra*; *Moss v. Smith,* 794 F.Supp. 11 (D.D.C. 1992); *Roher v. District of Columbia,* 1989 U.S. Dist. LEXIS 12017 (D.D.C. 1989).[2] Indeed, courts have held that a mere change in the physical location of a disabled student's educational program, without more, is not a change in placement and does not trigger the right to prior notice to which students and/or parents are entitled when a placement is about to be changed. *Weil v. Board of Elementary & Secondary Education,* 931 F.2d 1069 (5th Cir.), *cert. den.* 502 U.S. 910 (1991); *Concerned Parents & Citizens for the Continuing Education*

---

[1] *Wagner*'s holding was unusual in that the Fourth Circuit held that 20 U.S.C. §1415(j), the IDEA's "stay-put" provision, does not apply when a student's placement becomes unavailable. The Fourth Circuit narrowly construed this section as applicable only when keeping the student in the same program is an option, which was not the case in *Wagger* and is not the case here. Nevertheless, the Circuit Court reached substantially the same result as all other cases which have addressed the duty owed to a special education student who unavoidably loses her opportunity to go to school at a specific location or to participate in a specific program, holding that program unavailability does not relieve a public school system of the duty to provide special education to the disabled student in a new setting. Instead of calling this a "stay-put" result, however, the Fourth Circuit relied upon a court's equitable power to change the student's placement to one consonant with her needs, citing what was then codified at 20 U.S.C. §1415(i)(2)(B)(iii) (since IDEA 2004 went into effect, this provision is found at 20 U.S.C. §1415(i)(2)(C)(iii)) and *Honig v. Doe,* 484 U.S. 305 (1988).

[2] Curiously, the District cited both *Moss v. Smith* and *Roher v. District of Columbia* in its motion, even though these cases support plaintiffs' position, not defendants'.

*at Malcolm X (PS 79),* 629 F.2$^d$ 751 (2$^d$ Cir. 1980), *cert. den.* 449 U.S. 1078 (1981). Thus, F.S.'s "current placement" was not, as a matter of law, Lowell itself, but a program like Lowell's. When F.S. graduated and no longer could attend Lowell, DCPS became obligated to find her something like it. It did not do so, relegating the task to Snyderman and Rosen.

F.S. and her parents are entitled to enforce her rights as prevailing parties in an administrative action, as well as her continued right to special education, in this Court. DCPS has no right, under IDEA or otherwise, to violate its IDEA obligations merely because it waited so long to commence the required processes that F.S. graduated from Lowell in the interim. *Laster II, supra.* Nor should the Court accept DCPS's argument that the Court should defer to its preliminary assessment that F.S. is currently ineligible for special education, and thus accept DCPS's termination of F.S.'s special education services. First, the facts pled in the amended complaint make it clear that this decision was bereft of meaningful information or analysis and can be given no weight. Second, even if DCPS had followed proper evaluation procedures and reached a reasoned decision concerning F.S.'s continued eligibility, she would still be entitled–under both the hearing officer's determination and IDEA–to remain in special education until all due process proceedings have run their course. To hold otherwise is to vitiate IDEA.

This situation does not call for the heightened expertise in special education that presumably is available in the administrative process, and to which courts normally defer when they require exhaustion of administrative remedies. Rather, all this Court has to do is enforce the March 10, 2004 determination by ordering the District to provide a special education placement for F.S. comparable to the program available to her at Lowell. Since DCPS has refused to do that, the Court can engage in the fairly perfunctory exercise of comparing the salient aspects of the Lowell program with those available at Burke, to see if Burke is that comparable placement. All other components of the

process of getting F.S. the special education she needs will be reserved for the due process hearing and any further actions to be taken by DCPS following that hearing.

The two cases the District cites in support of its motion to dismiss are inapposite. In *Moss v. Smith, supra,* this Court dismissed a suit to maintain a student's placement under the "stay-put" provision because (a) no administrative procedures had been invoked, a necessary prerequisite to maintaining the status quo; and (b) DCPS was not actually proposing a change in the student's placement. Rather, the family was concerned that the student's then-current placement might become unavailable due to a contract dispute between the school and DCPS, and then if that happened, that DCPS would not propose an appropriate alternative. Indeed, the evidence showed that DCPS was ready to place the student at a comparable school which, the Court held, was not a change sufficient to trigger the student's stay-put rights. Here, by comparison, DCPS has effectively removed F.S. from special education entirely, and F.S. and her parents have properly brought this matter to a due process hearing. No one could argue that this is not a change in placement, or that F.S. falls outside the statutory standard for maintaining that placement.

Similarly, in *Roher v. District of Columbia, supra,* 15 disabled students and their parents ran to court for a temporary restraining order to prevent DCPS from moving those students from a private special education program to what looked like comparable public school offerings. The district court found that absent evidence that the overall programs offered had been changed–as opposed to mere changes in physical locations of those programs–the plaintiffs had not identified changes significant enough to invoke IDEA's "stay-put" guarantee. Further, without pending administrative proceedings, a necessary prerequisite for the stay-put was missing. The court noted, however, that once these elements are satisfied, a child enjoys protection against being moved from her current educational placement. If anything, *Roher* supports plaintiffs' position, not defendants':

8

DCPS's refusal to provide a special education placement for F.S. while the administrative proceedings are pending is what has changed her placement, not her graduation from Lowell.

### II.  Staying these proceedings will harm F.S.

The District suggests, in the alternative, that the Court should stay consideration of the amended complaint pending final disposition of the administrative proceedings F.S. has initiated. This, of course, stands IDEA on its head. The very reason why special education students are statutorily entitled to remain in their most recent uncontested placements while litigation over changes in those placements goes forward is to avoid harming them by depriving them of education that will never be fully recaptured. The District's stay request blithely assumes that its uninformed removal of F.S. from special education was correct, when the history of how we got where we are today shows anything but. Furthermore, the facts indicate that F.S.'s administrative case will not be resolved quickly, as the most likely outcome of the due process hearing is an order sending the matter back to DCPS to reconsider F.S.'s current special education needs on the complete record that DCPS failed to compile the first time around. This will then be followed by further activities to develop an IEP, identify a placement and, possibly, yet another administrative hearing if DCPS and F.S.'s parents disagree.

The only interest that will be served by a stay is DCPS's desire for unwarranted delay. The education of a growing, fragile child should not be held hostage to that.

**CONCLUSION**

For all the foregoing reasons, plaintiffs respectfully submit that defendants' motion for partial dismissal of the amended complaint or in the alternative for a stay of proceedings should be denied.

/s/    *Diana M. Savit*
Diana M. Savit #244970
**SAVIT & SZYMKOWICZ, LLP**
7315 Wisconsin Avenue
Suite 601N
Bethesda, Maryland 20814
(301) 951-9191
Attorneys for plaintiffs