**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| F.S., a minor, by and through her parents and next friends, Lois Rosen and Mark Snyderman, *et al.*, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 06-923 (EGS) |
| v. | ) ) | |
| THE DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

This action was originally brought under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, on behalf of two children, F.S. and R.S., by their parents against the District of Columbia. Following defendants' initial motion to dismiss, plaintiffs filed an amended complaint, which includes claims regarding only one of the children. Specifically, plaintiffs seek to enforce a 2004 administrative order regarding F.S.'s IDEA placement and to recoup attorney's fees for the 2004 proceedings. Currently pending before the Court is defendants' motion to dismiss the second claim in the amended complaint or, in the alternative, stay the case until pending administrative proceedings are complete. Upon consideration of the motion, the response and reply thereto, the

applicable law, and the entire record, the Court determines that it has jurisdiction over plaintiffs' second claim, but that issues raised by the claim should be first addressed by the pending due process hearing. Therefore, for the reasons stated herein, defendants' motion is **DENIED in part**, with regard to the request to dismiss, and **GRANTED in part**, with regard to the request for a stay.

## BACKGROUND

F.S. is a disabled student who has previously been found entitled to special education and related services under the IDEA.[1] In early 2004, F.S. was attending the Lowell School ("Lowell"). Because the District of Columbia Public Schools ("DCPS") did not meet its IDEA obligations to F.S., her parents requested a due process hearing to address DCPS's failure to provide a free appropriate public education. At the hearing, held on March 2, 2004, the parties settled their differences and a hearing officer's determination was issued that embodied their agreement and also directed the parties to perform certain tasks to effectuate it. Hearing Officer's Decision, Mar. 10, 2004, Pls.' Ex. 1.

The hearing officer ordered, *inter alia*, that: (1) F.S.'s

---

[1] In deciding a motion to dismiss, the Court must accept as true all factual allegations in the complaint. *See Atchinson v. Dist. of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).

parents obtain new psycho-educational, speech/language, and social history evaluations for F.S.; (2) DCPS pay for these evaluations and then convene a multi-disciplinary team ("MDT") meeting for F.S. within 15 days after receiving the updated evaluations; and (3) participants in the MDT meeting update F.S.'s individualized education program ("IEP"), address her entitlement to compensatory education, and discuss placement, if appropriate.  *Id.* at 4.  DCPS was ordered to reimburse F.S.'s parents for tuition and related expenses incurred for schools years 2000-01 through to the present "and continuing until such time as the parents accept a DCPS-proposed alternative placement or DCPS prevails at a due process hearing regarding its proposed alternative placement."  *Id.* at 3.  F.S. was ordered to remain at her current placement, Lowell, until her placement "is changed as provided in this paragraph."  *Id.*  Finally, if DCPS did not comply with the decision, F.S.'s counsel was directed to contact the DCPS Office of Mediation and Compliance prior to filing a hearing request alleging DCPS's failure to comply.  *Id.* at 4.

Complying with the determination, F.S.'s parents obtained private psycho-educational and speech/language evaluations in 2004 and forwarded them to DCPS in August 2005.  DCPS did not convene an MDT meeting during the 2006 spring semester, though it had all necessary evaluations by that point.  Consequently, it did not prepare an IEP for F.S., nor did it propose a placement

for her, and thus failed to comply with the hearing officer's determination.  DCPS funded F.S.'s education at Lowell until June 2006, when F.S. completed the sixth grade at Lowell and graduated.  Because DCPS had never proposed a placement for F.S., F.S.'s parents searched on their own for a new school for her.  F.S. was accepted at the Edmund Burke School ("Burke"), which offers a program comparable to Lowell's beyond the sixth grade.

　　　　Finally, on October 12, 2006, DCPS convened an MDT meeting.  Prior to the meeting, DCPS did not observe F.S. engaged in classroom academics or otherwise attempt to gather any information about F.S.'s previous or current educational performance.  At the meeting, DCPS officials disclosed that they were not aware of F.S.'s prior special education history or of the 2004 hearing officer's determination, and that they had no file for F.S. and no information about her other than the three evaluations submitted in 2005.  DCPS refused to accept additional information from F.S.'s parents, therapist, or current tutor at the meeting.  DCPS then proceeded to find F.S. ineligible for special education due to lack of information about the impact of F.S.'s disability upon her academic performance, and thus did not prepare an IEP or propose a special education placement.  DCPS refused to continue funding F.S.'s education as apparently required by the 2004 determination.

On October 20, 2006, F.S.'s parents sent a letter to DCPS and its Office of Mediation and Compliance about DCPS's violation of the 2004 determination. No response was ever received. On December 29, 2006, F.S.'s parents requested a due process hearing to challenge DCPS's determination of ineligibility and failure to provide special education for F.S. during the current school year. Due Process Compl. Not., Pls.' Ex. 2. They sought (1) a finding that F.S. was eligible for special education and an appropriate placement, and (2) an order that DCPS continue to comply with the 2004 determination, including funding F.S. in a program comparable to Lowell until the requirements of the 2004 determination have been met. *Id.* at 4. In the mean time, F.S. continues to attend Burke and F.S.'s parents continue to fund her education there.

On January 8, 2007, plaintiffs filed an amended complaint with two claims under the IDEA. First, plaintiffs seek attorney's fees as the prevailing party in the proceedings that culminated in the 2004 determination. Second, plaintiffs seek an order directing DCPS to place and fund F.S. at Burke unless and until her placement is changed consistent with the applicable law and the 2004 determination. On March 22, 2007, pursuant to this Court's order, the parties submitted a status report stating that F.S.'s due process hearing is scheduled for April 25, 2007.

**STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sparrow v. United Air Lines*, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000) (citations omitted). The Court will accept as true all factual allegations in the complaint, and give plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996). The standard of review for a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is virtually identical to that used for 12(b)(6) motions, except that the Court is free to consider material outside the pleadings for purposes of resolving jurisdictional issues. *Caesar v. United States*, 258 F. Supp. 2d 1, 2 (D.D.C. 2003). In the Rule 12(b)(1) context, the plaintiff bears the burden of proving jurisdiction. *Id.* at 3.

**ANALYSIS**

In their motion, defendants argue that the Court cannot, or alternatively should not, consider plaintiffs' second claim until the pending administrative hearing is complete. Plaintiffs contend that administrative exhaustion is unnecessary for this claim, and that staying the case only exacerbates the educational harm at stake.

**I. Dismissal of Second Claim**

The purpose of the IDEA is to provide disabled children with "a free appropriate public education," and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d). To that end, the parents or legal guardians, teachers, school district, and other professionals meet annually to design a comprehensive IEP tailored to each disabled child's needs. 20 U.S.C. § 1414(d). The IEP "sets forth the child's educational level, performance, and goals," and it "is the governing document for all educational decisions concerning the child." *Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996); *Alston v. Dist. of Columbia*, 439 F. Supp. 2d 86, 90 (D.D.C. 2006). Once the IEP is developed, the school system must provide an appropriate educational placement that comports with the IEP. *Alston*, 439 F. Supp. 2d at 90.

Because the "IDEA guarantees parents of disabled children an opportunity to participate in the identification, evaluation, or educational placement of their children," *Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000), parents who disagree with the educational placement or the conclusions set forth in the IEP may request an administrative "impartial due process hearing." 20 U.S.C. § 1415(f). Parents who object to the hearing officer's decision may bring suit in state or federal

court.  20 U.S.C. § 1415(i)(2).  Under the IDEA, a plaintiff's failure to exhaust administrative remedies deprives the court of authority to hear the suit.  *See Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003); *Spencer v. Dist. of Columbia*, 416 F. Supp. 2d 5, 10 (D.D.C. 2006).  Only "where exhaustion would be futile or inadequate" may a plaintiff bypass the administrative process and proceed to court.  *Spencer*, 416 F. Supp. 2d at 10.

During the pendency of judicial or administrative proceedings, if "the State or local educational agency and the parents otherwise agree, the child *shall* remain in his then-current education placement."  20 U.S.C. § 1415(j) (emphasis added).  This procedural safeguard is commonly known as the "stay put provision" and its purpose is to prohibit "state or local school authorities from unilaterally excluding disabled children from the classroom . . . during the pendency of review proceedings."  *Honig v. Doe*, 484 U.S. 305, 306, 308 (1988).  A parent can invoke the stay put provision when the school system proposes "a fundamental change in, or elimination of, a basic element of the [then-current education placement]."  *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984); *Alston*, 439 F. Supp. 2d at 90.

Although the IDEA does not define the term "then-current educational placement," the meaning of the term "falls somewhere between the physical school attended by a child and the abstract

8

goals of a child's IEP." *Cmty. High Sch. Dist. No. 218*, 103 F.3d at 548.  Accordingly, if a child's then-current educational placement is not available, the school system must provide the student with placement in a similar program during the pendency of administrative and judicial proceedings.  *Knight v. Dist. of Columbia*, 877 F.2d 1025, 1029 (D.C. Cir. 1989); *Alston*, 439 F. Supp. 2d at 91.  "The stay put provision has been interpreted as imposing an automatic statutory injunction."  *Casey K. v. St. Anne Cmty. High Sch. Dist.*, 400 F.3d 508, 511 (7th Cir. 2005) (comparing a stay put injunction to an automatic stay in a bankruptcy case).  In an action alleging a violation of the IDEA's stay put provision, parents are not required to exhaust the administrative process before bringing suit in court.  *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002); *Alston*, 439 F. Supp. 2d at 91.  The reasoning behind this rule is that given the time-sensitive nature of the stay put provision, the administrative process is inadequate to remedy violations of the provision.  *Alston*, 439 F. Supp. 2d at 91.

Plaintiffs' second claim in their amended complaint alleges that DCPS's failure to place F.S. at Burke and fund her education there violates the IDEA and the 2004 determination.  In their motion to dismiss, defendants argue that DCPS's actions do not violate the stay put provision because F.S. does not have a "then-current educational placement," and thus that plaintiffs'

9

claim is premature because administrative proceedings have not been exhausted.  Defendants elide over the fact that plaintiffs' claim is also based on the binding orders of the 2004 determination.

In evaluating plaintiffs' claim under the stay put provision, the difficult question is whether F.S. had a current educational placement by virtue of the settlement memorialized in the 2004 determination.  On the one hand, courts have found that settlements where a school district merely agrees to fund a private school education for one year do not render the private school an "educational placement."  See *Zvi D. v. Ambach*, 694 F.2d 904, 907-08 (2d. Cir. 1982); *Mayo v. Baltimore City Pub. Sch.*, 40 F. Supp. 2d 331, 334 (D. Md. 1999).  On the other hand, a hearing officer's determination that a private school is the appropriate placement establishes that school as the current educational placement under the stay put provision.  See *Murphy*, 297 F.3d at 200-01; *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990).  In this case, the 2004 determination ordered that F.S. was to "remain in her *current placement*, Lowell, until her placement is changed as provided."  Hearing Officer's Decision, at 3 (emphasis added). Moreover, DCPS was ordered to fund F.S.'s education until her placement was changed, a period which lasted at least two years and may be ongoing.  Because the 2004 determination described

Lowell as F.S.'s "current placement," and imposed an open-ended funding obligation upon DCPS, the Court finds that the 2004 determination resulted in Lowell being F.S.'s "then-current educational placement" under the IDEA.

With that established, DCPS's continuing obligations are clear. If F.S.'s then-current educational placement becomes unavailable, DCPS must provide her with placement in a similar program during the pendency of administrative and judicial proceedings. *See Alston*, 439 F. Supp. 2d at 91. The fact that F.S. graduated from Lowell after completing the sixth grade does not relieve DCPS of its obligation to place her in a similar program. *See Casey K.*, 400 F.3d at 511 ("It's not as if the break between eighth and ninth grade, or between tenth and eleventh grade, is so much sharper than any other grade break as to make temporary continuation of the previous educational placement inappropriate."). Moreover, DCPS's decision to cut off funding for F.S.'s education constitutes a unilateral change in placement that is prohibited by the stay put provision. *See Murphy*, 297 F.3d at 198. Therefore, DCPS's present failure to fund an appropriate educational placement for F.S. during ongoing legal proceedings violates the stay put provision, and plaintiffs need not exhaust administrative remedies in order for the Court to have jurisdiction over their second claim. Accordingly, the Court will deny defendants' motion in part, with regard to their

request for partial dismissal.[2]

**II. Stay of Proceedings**

In the alternative, defendants move the Court to stay proceedings pending the resolution of the due process hearing that it presently scheduled for April 25, 2007. "A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." *Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). "Indeed, 'a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.'" *Id.* (quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)).

Ordinarily, parents raise a claim under the stay put provision in seeking immediate injunctive relief. *See, e.g.*, *Laster v. Dist. of Columbia*, 394 F. Supp. 2d 60, 62 & n.1 (D.D.C.

---

[2] As this Court has jurisdiction under the stay put provision, the Court need not determine whether administrative exhaustion is necessary for plaintiffs' claim that DCPS has violated the 2004 determination. *See Massey v. Dist. of Columbia*, 400 F. Supp. 2d 66, 73-74 (D.D.C. 2005) ("Because of DCPS' repeated failures to follow unambiguous terms of the law and to acknowledge and correct its mistakes, this Court cannot find that DCPS' process for administrative relief would be adequate.").

2005).  In this case, however, plaintiffs have not yet moved for an injunction, apparently because F.S.'s education at Burke is not in immediate jeopardy.  That being so, a stay lasting a matter of weeks would not appear to prejudice plaintiffs or F.S's education.  In addition, the scheduled due process hearing may administratively answer several issues that are central to this case, such as whether DCPS violated the 2004 determination, whether F.S. is still entitled to educational services under the IDEA, and whether Burke is an appropriate educational placement.  Because the Court finds it unnecessary and unwise to conduct parallel proceedings to resolve the same questions, the Court will stay the case pending the outcome of the due process hearing.  However, if circumstances change, such as if plaintiffs do require immediate injunctive relief of if the due process hearing is not resolved quickly, the Court will reconsider the stay.  Accordingly, the Court directs the parties to file status reports on a monthly basis while the stay is in place.

## CONCLUSION

Although this Court has jurisdiction over plaintiffs' claims, the Court concludes that this case should be stayed pending the outcome of the scheduled due process hearing.  Therefore, defendants' motion is **DENIED in part**, with regard to the request to dismiss, and **GRANTED in part**, with regard to the request for a stay.  In order to keep abreast of the

administrative proceedings, the Court directs the parties to file a joint status report every thirty (30) days, with the first such report due on May 1, 2007. The report shall inform the Court of the status of pending administrative proceedings and the parties' recommendations for further proceedings in this Court. An appropriate Order accompanies this Memorandum Opinion.


**Signed:    Emmet G. Sullivan
             United States District Judge
             April 13, 2007**